**Bruce LLOYD et al., Appellants,**

v.

**James M. MYERS, Appellee.**

No. 5988.

Court of Civil Appeals of Texas, Waco.

Aug. 30, 1979.

Rehearing Denied Sept. 20, 1979.

Jack P. Martin, Jr., Burleson, Baldwin, Pate & Gibson, Dallas, for appellants.

Randy Taylor, Dallas, for appellee.

HALL, Justice.

Plaintiff James M. Myers brought this suit for actual and exemplary damages and for attorney's fees against defendants Bruce Lloyd, Mrs. Clara Ziegler, and Northeast Texas Credit Corporation under alternative counts based upon (1) a common law action for malicious criminal prosecution against him by defendants, and (2) a statutory action for unreasonable collection efforts against him by defendants in violation of Article 5069–11.02, Vernon's Tex.Civ.St., which prohibits a debt collector from collecting or attempting to collect a debt created primarily for personal, family, or household purposes by coercion or attempts to coerce which "employ any of the following practices: (b) accusing falsely . . . any person of fraud or any other crime." After the case was tried to a jury, judgment was rendered awarding plaintiff damages totaling $26,000.00. Defendants appeal. We affirm the judgment.

The gist of plaintiff's detailed petition was that defendant Lloyd is president of defendant Credit Corporation and defendant Ziegler is an employee of the Corporation; that while acting for the corporation Lloyd and Ziegler maliciously and without probable cause made false statements to the County Attorney of Wood County, Texas, charging plaintiff with a criminal offense, and solicited and procured the presentment of the charge to the grand jury of Wood County and thereby caused the return of an indictment by the grand jury charging plaintiff with the offense of theft of property over the value of $200.00 and the issuance of legal process under the indictment; that defendants' actions were willfully and maliciously done for the sole purpose of illegally collecting and extorting the payment of a debt in the nature of a loan previously made by defendant corporation to plaintiff which was secured by several items of personal property owned by plaintiff and in plaintiff's possession; that plaintiff was arrested under the indictment and made bail to gain his release; that he was not guilty of the charge of theft made against him; and that the indictment was eventually dismissed on motion of the State's attorney for want of sufficient evidence. Plaintiff sought recovery of $500.00 expended by him for his bail bond fee under the indictment, $10,000.00 for other actual damages, $10,000.00 for exemplary damages, $1,500.00 attorney's fees for representation under the indictment, and $4,250.00 attorney's fees for the trial of this case and on appeal if an appeal was taken.

Defendants answered with a general denial.

Prior to the submission of the case to the jury, the parties entered into the following stipulation: "In the event the Plaintiff is

ultimately entitled to the entry of a decree entitling him to recover damages from the Defendants, or any of them, that Plaintiff will be entitled to recover damages for the expenses resulting from the criminal prosecution in question in the amount of fifteen hundred dollars attorney's fees and five hundred dollars bond fee, and for reasonable attorney's fees in the instant case of two thousand dollars for the trial of this case and an additional amount of one thousand dollars in the event an appeal is perfected in this case."

The jury made the following answers to the special issues:

No. 1.   Found that the criminal proceeding was terminated in plaintiff's favor.

No. 2.   Found that plaintiff was innocent of the charge of theft that was brought against him.

The following instruction was given to the jury in connection with Special Issue No. 2: " 'THEFT' means the fraudulent taking of corporeal personal property belonging to another from his possession or from the possession of some person holding it for him, without his consent, with intent to deprive the owner of its value and to appropriate it to the use or benefit of the person taking.   You are further instructed that the property need not be removed from the presence nor from the premises of the owner to constitute theft."

No. 3.   Found that there was no probable cause for the criminal proceeding initiated by defendant Ziegler that was brought against plaintiff.

The following instruction was given to the jury in connection with Special Issue No. 3: " 'PROBABLE CAUSE' means the existence of such facts and circumstances as would excite the belief in a person of a reasonable mind, acting on the facts or circumstances within his knowledge at the time, that James M. Myers was guilty of a crime. You are further instructed that a person filing a criminal complaint does so upon probable cause if that person, in good faith, makes a full and fair statement of facts to the prosecuting attorney who thereafter commences the criminal proceeding."

No. 4.   Found that defendant Credit Corporation, "through Clara Ziegler, after filing the criminal complaint in question, continued to prosecute the criminal action against plaintiff in order to compel plaintiff to reimburse it for the amount of the loan."

No. 5.   Found that defendant Ziegler acted with malice when she initiated the criminal charge against plaintiff.

No. 6.   Found that defendant Lloyd acted with malice in directing Ziegler to initiate a criminal charge against plaintiff.

The following instruction was given to the jury in connection with Special Issues Nos. 5 and 6: " 'MALICE' means ill will and bad or evil motive or such gross indifference to the rights of another as amounts to a willful or wanton act done intentionally and without just cause or excuse."

No. 7.   Found that Ziegler falsely accused plaintiff of committing a crime in an attempt to collect the debt in question when she initiated the criminal charge against him.

No. 8.   Found that Ziegler was engaged in the service of defendant Credit Corporation in the furtherance of its business when she initiated the criminal charge against plaintiff.

No. 9.   Found that Ziegler represented defendant Credit Corporation "in such manner that her actions would be regarded as the actions of said corporation itself as distinguished from the actions of a mere employee" when she initiated the criminal charge against plaintiff.

No. 10.   Found that plaintiff should be awarded the following actual damages "which resulted from the occurrence in question":

a.   $2,500.00 for mental anguish, humiliation, and embarrassment.

b.   $7,500.00 for damage to reputation and character.

c. $1,500.00 for loss of earnings in the past.

d. $3,500.00 for loss of earnings in the future.

Nos. 11, 12, and 13. Found that plaintiff should be awarded the following exemplary damages: $3,000.00 against Ziegler, $3,000.00 against Lloyd, and $5,000.00 against the Credit Corporation.

The following instruction was given to the jury in connection with Special Issues Nos. 11, 12, and 13: " 'EXEMPLARY DAMAGES' means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment in addition to any amount which may have been found by you as actual damages."

Judgment was rendered on the parties' stipulation and the verdict that plaintiff recover $15,000.00 from defendants jointly and severally, and that additionally and separately plaintiff recover $3,000.00 exemplary damages from Lloyd, $3,000.00 exemplary damages from Ziegler, and $5,000.00 from the Credit Corporation.

Defendants' complaints for reversal relate to the jury's answers to only two special issues: They contend that the jury's findings that Ziegler acted without probable cause (special issue no. 3) and with malice (special issue no. 5) when she initiated the criminal charge against plaintiff are not supported by any evidence, and, alternatively, that those findings are against the great weight and preponderance of the evidence.

■ We may look only to the evidence and the inferences therefrom favorable to the finding in reviewing a "no evidence" complaint; and we must weigh all of the evidence in reviewing a question of the "great weight and preponderance" of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

There is proof of the following facts. Defendant Credit Corporation's office is in Wood County. Defendant Lloyd is its president and manager. Defendant Ziegler is Lloyd's daughter and acts with him in the management of the Credit Corporation's business, including collections. In October, 1973, dealing with Lloyd, plaintiff and his wife Carol Myers borrowed $298.25 from the Credit Corporation as a personal loan and executed a promissory note for $432.00 payable in 24 monthly installments of $18.00, beginning in November, 1974. Plaintiff and his wife had two small children. The money was borrowed by them for household expenses. The loan was secured by a security agreement executed by plaintiffs on a television set, a refrigerator, a clothes washer and a clothes dryer. This collateral was owned by plaintiffs and was fully paid for. It was not purchased from defendant Credit Corporation, and it had never been owned by defendant Lloyd. Ziegler and Lloyd knew that. At the time the loan was made, plaintiffs lived in Franklin County. The collateral merchandise was in Franklin County with them, and it had never been in Wood County. Defendants knew the collateral was located in Franklin County, and they filed the security agreement there. In April, 1974, plaintiffs moved to the City of Petty, in Lamar County. Prior to moving, Mrs. Myers went to defendants' office and received permission, probably from Lloyd, to make the move with the collateral. When he moved to Petty, plaintiff changed jobs and was not making his expenses, and he and Mrs. Myers became delinquent on their payments. In June, 1974, plaintiff received the following letter, addressed to him at Petty, from Lloyd: "Dear James. If you will continue to send me $18.00 a week, it will be okay, but if you fail to make a payment, I will have no other choice but to pick up your furniture." In late summer, 1974, plaintiff and Mrs. Myers moved to Dallas County. Before they moved Mrs. Myers notified defendants of the intended move; and after they moved, she notified defendants of their address. She also left their forwarding address with the postal authorities in the City of Petty. Plaintiff changed jobs several times in Dallas County, never earning more than $500.00 per month gross

pay. He and Mrs. Myers made payments on the loan to the best of their ability; and although they continued to be delinquent, they were never behind more than two or three payments.

In January, 1975, Ziegler, with Lloyd's knowledge and "insistence" according to him, went to Belker Paschall the county attorney of Wood County and discussed with him the delinquent status of plaintiff's loan. This was not an uncommon practice by defendants. Lloyd testified: "Of course, to stay in business we have to try to collect our money. I don't do a very good job. But we have had to file on people ever since I've been in business." Paschall was responsible for the prosecution of criminal cases in Wood County, including felonies. He said that after talking with Ziegler, "I thought that if there was any law that had been violated, it had been a removal of mortgaged property, but on the other hand, as I pointed out to her, I thought probably it was just a civil case. That was my advice to her." After Ziegler's visit, Paschall mailed the following letter to plaintiff, in January, 1975, addressed to plaintiff at Petty, Texas:

"Dear Mr. Myers:

Mrs. Clara Ziegler, with Northeast Texas Credit Corporation of Winnsboro, Texas, has advised this office that she has contacted you several times in regard to a television set, refrigerator, and dryer which you purchased from Northeast Texas Credit. Mrs. Ziegler has informed us that unless the merchandise is returned or the balance paid by Monday, January 20, she will proceed with the filing of criminal charges against you. Your cooperation with us in this matter will be appreciated."

The letter was forwarded to plaintiff in Dallas by the postal authorities. There is evidence that defendants had knowledge of the letter, including evidence that Ziegler later contacted Paschall and asked him if he had received payment from plaintiff.

In February, 1975, apparently by arrangement through Paschall, Ziegler testified before the grand jury of Wood County.

Thereafter, the grand jury indicted plaintiff for felony theft "in Wood County" of the television set, the refrigerator, and the washer and dryer from defendant Lloyd "the owner thereof." It was alleged in the indictment that on or about April 16, 1974, plaintiff, in Wood County, "did then and there unlawfully exercise control over" the pledged collateral "without the effective consent of Bruce Lloyd, the owner thereof, with intent to deprive said owner of said property." An arrest warrant for plaintiff was issued on the indictment; and plaintiff was arrested on the job in Dallas, in March, 1975. He was placed in jail, and gained his release twelve hours later by posting a corporate bail bond. Eventually, in December, 1975, the prosecution was dismissed upon motion by Paschall, and the finding of the court, that the allegations in the indictment were not supported by sufficient evidence.

Ziegler testified that based upon Paschall's statements to her on her visit to his office, she went to the grand jury a month later believing plaintiff had committed the offense of "removing mortgaged property" by removing the collateral from Franklin County, and that she did not seek the theft indictment.

At the time of the return of the indictment, Paschall had been practicing law for twenty years, and he had been county attorney since 1969. He often wrote collection letters for the merchants of Wood County (he said, "I do it for everybody"), and he had written such letters for defendants prior to the one he wrote to plaintiff. He said the statements in his letter to plaintiff were based upon the "circumstances and events" related to him by Ziegler on her first visit, and that what he set forth in the letter was a "fair summary" of the information he received from her. He detailed his normal procedure with grand juries and the return of indictments, and stated that he had no reason to believe that procedure was not followed in the instant case. The effect of his testimony was this: He was present when Ziegler testified before the grand jury. Based upon the facts of her testimony, he advised the grand jury

that plaintiff was guilty of the offense of theft for which he was indicted, and the grand jury returned the indictment. He said that he did his "dead level best to advise the grand jury of what [he] knew the law was"; that he did his "dead level best to advise them as to what law, in [his] opinion, James Myers had violated"; and that "based on that advice, they returned an indictment against James Myers alleging that on or about the 16th day of April, 1974, he stole from the owner, Bruce Lloyd, one Zenith color television set, one RCA refrigerator, one RCA washer and one RCA dryer." He testified that prior to the time of dismissal he was "never made aware" of the fact "that Bruce Lloyd never owned that property." The evidence shows that Lloyd learned that plaintiff had been indicted for theft about 30 days after the indictment was returned by the grand jury, and that defendants thereafter unsuccessfully used the theft charge against plaintiff in an attempt to force him to pay the balance of his account. Specifically, prior to the dismissal of the indictment, Ziegler executed an affidavit for Paschall in which she stated that "complainant approves, consents and requests that said cause be dismissed" upon payment by plaintiff of the balance due on his loan. Plaintiff later paid the balance but his attorney in the criminal case, James D. Pickett, testified that plaintiff's payment was not a condition of the dismissal, that plaintiff never promised to pay in exchange for the dismissal, and that the dismissal was based solely upon the fact that Paschall learned through Pickett that plaintiff had not committed the offense of theft of Lloyd's property.

■■ The jury's finding in their answer to special issue no. 7 that Ziegler falsely accused plaintiff of committing a crime in an attempt to collect the debt in question "when she initiated the criminal charge against him" is not challenged by defendants. We agree with plaintiff that the finding establishes his cause of action based upon unreasonable collection efforts by defendants under the provisions of Article 5069–11.02(b), supra. The right to exemplary damages when a tort is committed

willfully, maliciously or fraudulently is one of general application recognized by the common law; and it is not dependent upon statute. *Briggs v. Rodriguez,* 236 S.W.2d 510, 515 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.). Accordingly, if defendants acted maliciously in violation of the statute, then plaintiff is entitled to the exemplary damages awarded by the jury. *Ledisco Financial Services, Inc. v. Viracola,* 533 S.W.2d 951, 957 (Tex.Civ.App.—Texarkana 1976, no writ). As we stated earlier, only the finding of malice against Ziegler is argued by defendants.

■ In order to sustain a suit for malicious prosecution, both malice and probable cause must combine. Where want of probable cause is first shown, then malice may be established by proof that the defendant's sole purpose for commencing the prosecution was to subserve his private interests. But, no matter what evidence of malice may be introduced, the suit must fail if the plaintiff does not establish want of probable cause. *Holt v. Follett,* 65 Tex. 550, 554 (1886); *Gabel v. Weisensee,* 49 Tex. 131, 139 (1878).

■ Probable cause is shown by proof that the complainant, in good faith, makes a full and fair statement of the facts as known to him to the prosecuting officer, and the criminal charge is thereafter filed or caused to be filed by such officer. *Sebastian v. Cheney,* 86 Tex. 497, 25 S.W. 691, 693 (1894); *Ada Oil Company v. Dillaberry,* 440 S.W.2d 902, 910 (Tex.Civ.App. [14th Dist.] 1969, writ dism'd). Defendants say that rule is applicable here, arguing there is no evidence that the indictment in question was not based upon a fair statement by Ziegler to Paschall and the grand jury of the circumstances and events surrounding plaintiff's loan account. We disagree with that argument. The particulars of Ziegler's testimony before the grand jury is not a part of the proof. It is reasonably inferable from Paschall's testimony that by the time Ziegler appeared before the grand jury she was claiming that the collateral for plaintiff's loan was originally owned by Lloyd or

the Credit Corporation in Wood County, and that plaintiff had unlawfully used the loan to gain possession and control of the pledged items from Lloyd or the company; and that in her testimony before the grand jury she sought the theft indictment. Those inferences are strengthened by the evidence that after defendants had learned plaintiff was in fact indicted for theft, they attempted (by Ziegler's affidavit to Paschall) to use the charge to collect their account. The evidence also establishes that when Ziegler sought the indictment she knew that plaintiff had not stolen the property, and that she brought the charge solely for the purpose of collecting the debt.

The evidence we have recited is legally sufficient to support the jury's determinations that Ziegler initiated the charge of theft against plaintiff, and that she acted without probable cause and with malice.

There is other proof which would have supported findings favorable to plaintiff on the issues in question, which we need not detail. We hold the evidence is factually sufficient to support the jury's findings.

Defendants' points and contentions are overruled. The judgment is affirmed.