**William W. HATCHER, Jr.,**
**Plaintiff-Appellant,**

v.

**BUDGET RENT–A–CAR SYSTEMS,**
**INC., Defendant-Appellee.**

**No. 78–1862.**

United States Court of Appeals,
Fifth Circuit.

May 14, 1980.

Rehearing Denied June 12, 1980.

Charles M. Wilson, III, Dallas, Tex., for plaintiff-appellant.

N. Henry Simpson, III, Dallas, Tex., for defendant-appellee.

Before THORNBERRY, GODBOLD and TATE, Circuit Judges.

THORNBERRY, Circuit Judge:

In this diversity case under Texas law we must decide whether the trial judge erred when he granted the defendant a directed verdict at the close of plaintiff's case alleging wrongful debt collection under Tex.Rev. Civ.Stat.Ann. art. 5069–11.02 (Vernon Supp. 1979). Because the evidence adduced by the plaintiff does not show that the defendant falsely accused the plaintiff of a crime, and would not allow reasonable jurors to reach a verdict contrary to the directed verdict granted by the trial judge, we affirm the decision in the court below.

I. Facts.

This case presents an unfortunate situation created by the misunderstanding and missed communication between the parties. Budget and Hatcher first dealt with each other on November 19, 1974, when Hatcher rented a car from Budget in Dallas because his car was being repaired. When he signed the rental form, Hatcher agreed to pay for the car through his Sears credit card, which Budget checked and accepted. The rental form signed by Hatcher required him to return the car by November 22. Hatcher, however, did not return the car until December 5, at which time Budget accepted the car without complaint. Hatcher paid the bill of $228.18 through his Sears charge account.

On January 23, 1975, Hatcher again rented a car from Budget because he believed his own car had been stolen, although in fact it had been repossessed. Hatcher again promised to pay for the car rental through his Sears credit card, which Budget again checked and accepted. The rental form required Hatcher to return the car on the following day, January 24. Hatcher, however did not return the car until January 27, at which time the car was overheating so badly that he was afraid to drive it.

When Hatcher returned the overheating car, he rented another car to replace it. A Budget employee filled out the new rental form and copied Hatcher's address and telephone numbers from the rental form for the previous car. The employee wrote the return date for the next day, January 28. Hatcher said that he intended to pay for the car through his Sears credit card, and signed the form to signify that all the information listed was correct. Hatcher testified that "I asked if I needed it for an extended period of time could I extend it and they said, yes, that would be no problem." Record, Vol. II, at 32.

Hatcher did not return the car as scheduled on January 28, nor did he call Budget to ask for an extension. On January 29 and 30 Budget employees tried to telephone Hatcher at his home and work numbers, but they received no answer. Finally on January 31 Budget employee Clark telephoned Hatcher at home. According to Clark's record of the call, Hatcher indicated that he would return the car that afternoon. Plaintiff's Exhibit 11. Clark marked the original rental form to show an extension until January 31, and noted on the "Over Due Follow-Up" sheet that Budget would need additional credit approval from Sears to pay for Hatcher's extended rental period. *Id.*

Hatcher did not return the car on January 31 as he had said he would. On February 3 Budget employees tried repeatedly to telephone Hatcher, but could not reach him. When Budget employees called Sears for approval of the necessary additional credit on Hatcher's account, Sears said that they would not approve additional credit for Hatcher's rental bill beyond February 3. Sears told Budget that it should have Hatcher return the car immediately. *Id.* Budget sent a mailgram demanding return of the car to Hatcher's address as listed on the rental form: "10820 Steppington # 330." The mailgram was returned as undeliverable because, it later turned out, Hatcher's address had been incorrectly copied from the previous rental form. Hatcher's actual address was "10820 Steppington # 3302," as written on the previous form. Hatcher's address and telephone number were listed under his roommate's name in the telephone directory. Record, Vol. II, at 75. Budget called Hatcher's home number

repeatedly on February 5. The man answering the phone hung up once, said Budget had a wrong number the second time, and finally told them that no one named Hatcher was at the number. Plaintiff's Exhibit 11.

For the next six weeks Budget apparently gave up trying to contact Hatcher, and Hatcher continued to use the rented car without notifying Budget or Sears. In the middle of March, 1975, Budget employees discovered the car in the parking lot at the Dallas-Fort Worth Airport and returned it to the Budget office there. A few days later Hatcher flew into the airport from Florida and saw that the car was gone. He reported it as stolen to the Budget airport desk and asked to rent another car. Budget employee Walker told Hatcher that the car had been taken back because it was overdue. She refused to rent another car to Hatcher. Hatcher returned to the Budget airport desk the next day and picked up various personal possessions that he had left in the car. A Budget employee told Hatcher that he needed to speak with a certain Budget officer at the downtown office about the overdue car. Hatcher tried once unsuccessfully to telephone the officer, but did not follow up on the call or speak to the officer. Record, Vol. II, at 77. Hatcher did not try to contact Sears about his credit for the car rental bill.

When Budget closed out the contract on Hatcher's car rental after they recovered the car in mid-March, Sears refused to pay for the seven-week car rental bill due on Hatcher's credit card. Record, Vol. I, at 23; Record, Vol. II, at 124. On June 17, 1975, Budget employee Don Woodfin went to the Dallas County district attorney. Woodfin gave the district attorney the rental form and mailgram concerning Hatcher's overdue car rental. Record, Vol. II, at 126, 143. No evidence at trial indicates what Woodfin told the district attorney about the incident. The district attorney charged Hatcher with felony theft of services under Tex.Penal Code § 31.04(a)(1) (Vernon 1974), as then in effect:

> (a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:
>
> (1) he intentionally or knowingly secures performance of the service by deception, threat, or false token . . .

The Dallas County grand jury indicted Hatcher for the crime on August 18, 1975.

By this time Hatcher was no longer in Dallas County. In July 1975 he went to Iran for a year-long job as a government contract administrator. Before Hatcher departed he left $2500 with his father-in-law in Dallas to pay for any bills that might come due while he was gone. Hatcher did not tell his father-in-law to expect a $900 bill for the car rental. *Id.* at 75. In January 1976 Hatcher returned to Dallas for a brief visit. He did not ask his father-in-law if the car rental bill had come. *Id.* at 78. On July 24, 1976, Hatcher returned to the United States after completing the job in Iran. When Hatcher departed the plane in Chicago's O'Hare Airport, his name was spotted on a computerized criminal checklist. Police arrested him and placed him in jail for over two days until Hatcher's father-in-law could travel to Chicago and post bail.

After Hatcher arrived back in Dallas he met with officers from Budget and agreed to pay the $902.18 bill. Budget signed a statement of non-prosecution and the district attorney dismissed the charges. In the next few months Hatcher applied without success for over forty-five positions as a contract administrator. Hatcher contends that the sole reason for his inability to obtain a contract administrator position is his arrest for felony theft of services, which he is required to mention on the standard form for security clearance requested by all potential employers. In December 1976 Hatcher filed suit against Budget in federal court for falsely accusing him of a crime for the purpose of collecting a debt. Hatcher seeks $103,325 actual damages and $250,000 punitive damages. During a jury trial in March 1978 the judge granted a directed

verdict to Budget at the close of Hatcher's case because Hatcher had not shown that Budget made any false statements to the district attorney and because any error in filing charges was excused as a bona fide error under Tex.Rev.Civ.Stat.Ann. art. 5069–11.08 (Vernon Supp.1979).

## II. False Accusation.

In reviewing an appeal from a directed verdict, we must consider all the evidence and uphold the directed verdict if the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

To establish Budget's liability for wrongful debt collection, Hatcher was required to show that Budget violated the following statutory provision:

No debt collector may collect or attempt to collect any debt alleged to be due and owing by any threats, coercion, or attempts to coerce which employ any of the following practices:

.    .    .    .    .

(b) accusing falsely or threatening to accuse falsely any person of fraud or any other crime;

.    .    .    .    .

Tex.Rev.Civ.Stat.Ann. art. 5060–11.02(b) (Vernon Supp.1979). The cases finding liability under this "false accusation" provision involve situations in which the defendant has given false information to the prosecutor, *Lloyd v. Myers*, 586 S.W.2d 222, 225–27 (Tex.Civ.App.—Waco ·1979, writ ref'd n. r. e.) (debt collector falsely claimed to own collateral possessed by debtor), or situations in which the defendant threatened to file charges based upon false information. *Central Adjustment Bureau, Inc. v. Gonzales*, 528 S.W.2d 314, 316 (Tex.Civ. App.—San Antonio 1975, no writ) (debt collector erroneously threatened wrong person about debt); *Foley Newsom Oil Co. v. Crawford*, 515 S.W.2d 750, 752 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ) (defendant threatened to file charges for collection of debt even though she knew plaintiff did not owe the debt); *Bank of North America v. Bell*, 493 S.W.2d 633, 635 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ) (defendant threatened to file charges unless plaintiff paid the full amount of accelerated debt even though defendant accelerated debt for fictitious reason and before first payment was due).

In *Lloyd*, the only Texas case in which the defendant actually accused the plaintiff of a crime, the plaintiff produced substantial evidence to show that the defendant made false statements to the prosecutor. The plaintiff in *Lloyd* established the falseness of the accusation against him by presenting testimony from the defendant's employee who actually accused him of the crime and testimony from the county attorney who spoke with the employee and initiated the prosecution. In contrast, Hatcher has produced no evidence to show that Budget made a false statement or factual misrepresentation to the district attorney. Hatcher did not call Don Woodfin, the Budget employee who reported the incident to the district attorney, nor did he call any witness from the district attorney's office. The only testimony describing what Budget told the district attorney is Walker's undisputed statement that Budget gave the district attorney the written records involved with Hatcher's car rental because Budget had been unable to contact Hatcher. Record, Vol. II, at 126. Because Hatcher produced no evidence to show that Budget made false statements or misrepresentations when it accused Hatcher of theft of services, reasonable jurors could not arrive at a verdict contrary to the directed verdict granted by the trial judge.

Hatcher has not shown that Budget falsely accused him of a crime by making false statements to the prosecutor, as in *Lloyd*. Instead, Hatcher seems to contend that Budget falsely accused him by reporting to the prosecutor facts that, however true, did not indicate that Hatcher had committed a crime. Under this theory, Hatcher would make Budget liable for false accusation because it incorrectly evaluated the facts, not because it falsely reported the facts to the

prosecutor. The Texas courts have rejected Hatcher's theory in analogous situations involving suits for malicious prosecution:

If the defendants stated the facts fully and fairly to the District Attorney, a highly competent one in this case, and such officer determines that such facts constitute a crime and proceeds to formulate the necessary papers to set the prosecution in motion, the complaining defendants are not liable in an action for malicious prosecution, since if there is any fault, it is not the defendants'. . . . This record reflects nothing which was withheld by defendants, and there is nothing shown which would indicate that defendants believed appellee to be not guilty of the criminal offense charged.

*Ada Oil Co. v. Dillaberry*, 440 S.W.2d 902, 912 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd). As in *Ada Oil*, Hatcher's theory of recovery is insufficient because, in the absence of evidence showing that Budget made false statements or misrepresentations to the district attorney, reasonable jurors could not reach a verdict concluding that Budget falsely accused Hatcher when the district attorney believed that the facts sufficiently indicated criminal activity to prosecute the case, and the grand jury believed that the facts sufficiently indicated criminal activity to issue an indictment.

Under the circumstances of this case, the district judge did not err when he granted appellee's motion for a directed verdict. Because we affirm the decision on these grounds, we do not consider the other arguments raised to support the directed verdict.

AFFIRMED.

TATE, Circuit Judge, dissenting:

I respectfully dissent.

The issue before us is whether the district court erroneously directed a verdict for the defendants. The district court's action cannot be sustained unless the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc).

The majority's very fair statement of the facts indicates to me that the district judge erred in refusing to permit the jury to weigh the evidence. Overall, most favorably to the plaintiff Hatcher, the evidence indicates the collection by the defendant Budget-Car, of an open account indebtedness through the misuse of the criminal process. Without attempting to write or telephone Hatcher through his employer (whose address or telephone number were shown on the application forms), Budget-Car filed criminal charges against Hatcher when its letter to his residence was returned *due to clerical error by Budget-Car's employees in copying the address*. As a result of the criminal charges, Hatcher was arrested at the Chicago Airport when he returned to the United States, held in jail for two days, and not released from the charge until he paid the open-account due to Budget-Car. The arrest for felony theft, the jury might well infer, has caused grave damage in the employment prospects of the plaintiff, a responsible professional.

The crime with which Hatcher was charged was theft by *"intentionally or knowingly"* securing performance of a service *"by deception, threat, or false token."* Texas Penal Code § 31.04(a)(1) (Vernon 1974). As the majority's statement of the facts shows, Hatcher did not obtain possession of Budget-Car's rental car or avoid payment for it by any *"deception, threat or false token."* The majority does not find otherwise, or that any crime was in fact committed by Hatcher.[1]

---

1. The majority correctly rejects, as frivolous, the defendants's argument that the plaintiff Hatcher erroneously gave a false address; a clerical error by the defendant's employees is shown as the cause of the mistake. Nor does the majority place any weight on the defendant's suggestion that Hatcher rented the car intending to keep it beyond the date upon which he stated he would return it; as a recurrent practice, the defendant permitted its customers to turn the vehicles in later than the date, without complaint.

The majority nevertheless finds no evidence from which the jury might find that the creditor Budget-Car "falsely" accused Hatcher of the crime (which concededly he did not commit), an essential for Hatcher's recovery under the Texas wrongful debt collection statute upon which this diversity action is based.

The error in this supposition is that, as the majority notes, "No evidence at trial indicates that Woodfin [Budget-Car's employee] told the district attorney about the incident." However, the jury might well suppose that, if Woodfin had told the facts truly, the district attorney (presumed to act correctly and in accordance with law) would *not* have charged Hatcher with a crime, for Hatcher did not (under the facts accepted by the majority as correct) intentionally secure the rental car and avoid payment for it by any "deception, threat or false token," as required by the Texas penal code provision. The jury might well suppose, as seems to be probable upon the defendant's arguments before us, that Woodfin might, instead of the true facts, have misinformed the district attorney, for instance, that Hatcher had given a false address (see footnote 1).

It is true that, had directed verdict not been granted at the close of the plaintiff's case, the defendant might have explained to the jury's satisfaction the inference otherwise arising that the district attorney incorrectly charged Hatcher with a crime, when no crime had been committed but at most a creditor-debtor misunderstanding over payment of an open account due. But, contrary to *Boeing Company v. Shipman*, the plaintiff was deprived of his opportunity to have the jury assess the evidence which gives rise to conflicting inferences, one of which to me in the present state of the record is that Budget-Car falsely filed a criminal charge against Hatcher, who had committed no crime, simply in order wrongfully to use the criminal process to collect the debt due it.

I therefore respectfully dissent.