



# MEMORANDUM OPINION

No. 04-10-00551-CV

**HIDDEN FOREST HOMEOWNERS ASSOCIATION**,
Appellant

v.

James K. **HERN**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-09929
Honorable Martha Tanner, Judge Presiding

**OPINION ON APPELLANT'S MOTION FOR REHEARING**

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:  December 7, 2011

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

The motion for rehearing filed by appellant Hidden Forest Homeowners Association is

granted.  This court's opinion and judgment dated June 8, 2011 are withdrawn, and this opinion

and judgment are substituted.

Hidden Forest Homeowners Association ("Hidden Forest") challenges the trial court's

judgment, complaining of the award of damages to James K. Hern on his counterclaim for

Hidden Forest's breach of its own restrictive covenants, as well as of the amount of attorney's fees awarded. We reverse the judgment of the trial court relating to Hern's counterclaim for breach of restrictive covenants and render judgment that Hern take nothing on his counterclaims. We affirm the award of attorney's fees to Hidden Forest.

## BACKGROUND

Hern owns a home located in the Hidden Forest subdivision. The subdivision is governed by the Hidden Forest Homeowners Association, which was formed pursuant to the Amended Declaration of Covenants, Conditions and Restrictions of Hidden Forest ("Declaration"); the Declaration obligates homeowners to pay semiannual assessments. In late 2006, Hern, expecting to be in the United Kingdom for most of 2007, attempted to prepay his 2007 and 2008 assessments, which amounted to approximately $115 every six months. Hidden Forest declined to accept payment for amounts not yet due and owing at that time. Hern left the country, and several written notices of delinquency were subsequently mailed to him. Hern returned to San Antonio for about six days in December of 2007, and admittedly failed to pay his 2007 assessments at that time.

Hidden Forest referred the matter to attorney Tom L. Newton, Jr. for collection. In January 2008, Newton sent a demand letter to Hern's home while he was out of the country. In April 2008, Hidden Forest placed a lien on Hern's home pursuant to a Notice of Assessment of Lien, asserting $907.65 as the lien amount ($407.65 in assessments and late fees and $500 in attorney's fees and expenses). Two months later, Hidden Forest filed suit against Hern, seeking foreclosure on its lien as well as monetary damages, including unpaid assessments, interest, and attorney's fees. The petition did not assert the amount of the assessments past-due or the attorney's fees sought, but the accompanying discovery asked Hern to admit that unpaid

assessments totaled $425.94 and that $1,500 was a reasonable and necessary amount of attorney's fees.

After being served with the lawsuit, Hern attempted to pay Hidden Forest $500 in attorney's fees, in addition to court costs and assessments. Hidden Forest refused his offer, and directed Hern to communicate with their attorney, Newton. Believing $1,500 to be an unreasonable amount of attorney's fees,[1] Hern then offered $900 to settle the claim; Hidden Forest again declined Hern's offer. Failing to resolve the entire claim, Hern also attempted to pay just the assessments that were undisputedly past-due, but Hidden Forest would not accept his money, and instead continued to charge Hern monthly late fees.[2] Hidden Forest also suspended Hern's right to vote and to use the common areas and facilities, such as the pool and tennis courts.

Frustrated by the situation, Hern hired an attorney and filed an answer and counterclaim. Hern admitted that he failed to pay his 2007 assessments, but denied that the attorney's fees and costs asserted by Hidden Forest were reasonable. Hern sought damages for unreasonable collection practices; Hern also alleged that Hidden Forest had violated its own Declaration by both suing for foreclosure of Hern's property and seeking a personal judgment against Hern. In August 2009, Hern placed $1,750 into the registry of the court, seeking a declaration "as to how much of said amount, if any, is reasonably owed to [Hidden Forest] by [Hern] after all lawful offsets" and as a gesture to show that he was not refusing to pay the 2007 assessments and reasonable attorney's fees. Hidden Forest rejected the tender of this money.

---

[1] Hern asked Hidden Forest to see an itemization of attorney's fees sought by Newton, but neither Hidden Forest nor Newton provided such documentation until Hern secured it via discovery. Hern retained counsel in August 2009.

[2] Hern additionally attempted to pay his 2008 assessments (which were not delinquent) after the lawsuit was filed, but Hidden Forest also rejected these payments since the matter of the 2007 assessments had been referred to legal counsel.

At trial, Becky Bowholtz, the former office manager of Hidden Forest, and Alan Cooper, the President of Hidden Forest, testified, as did Hern. Additionally, counsel for both parties testified regarding attorney's fees. Billing records introduced by Newton showed $228 worth of time for his actual attorney's fees as of late April 2008 when the lawsuit was filed. Nevertheless, Hidden Forest sought $25,000 in attorney's fees through trial, which was held two years later. The case was submitted to the jury, who found that Hern breached the Declaration's covenants and restrictions by failing to pay assessments. The jury found that $946.71 would compensate Hidden Forest for its damages resulting from Hern's failure to pay assessments that had accrued up to the time of trial and that $728.00 was a reasonable amount of attorney's fees for Hidden Forest. As to Hern's counterclaims, the jury found that Hidden Forest engaged in unreasonable collection practices and breached their own covenants; the jury awarded $11,000 for both such claims. Hern elected to recover based on Hidden Forest's breach of its own restrictive covenants. After offset, trial court rendered a final judgment in Hern's favor in the amount of $9,325.29, plus court costs, post-judgment interest, and conditional attorney's fees in the event of an appeal. The judgment also denied an order of foreclosure and ordered Hidden Forest to release the lien filed against Hern's property within seven days of judgment becoming final. Hidden Forest timely appealed.

## DISCUSSION

On appeal, Hidden Forest challenges the trial court's judgment on four grounds, contending the trial court erred in rendering judgment on Hern's counterclaims of unreasonable debt collection practices and breach of restrictive covenants. Hidden Forest also complains of the admission of settlement offers made by Hern, and of the jury's finding on the amount of attorney's fees owed to Hidden Forest.

*Hern's Counterclaim: Hidden Forest's Breach of Restrictive Covenants*

We first address Hidden Forest's argument that the trial court erred in rendering judgment in favor of Hern on a claim for breach of Hidden Forest's own restrictive covenants[3] because (1) this cause of action was neither pleaded nor tried by consent, and (2) there was no evidence that Hidden Forest breached the restrictive covenants. Hern's live pleading at trial was "Defendant's Second Amended Answer and Counterclaim." Hidden Forest complains that although Hern stated in paragraph 9 that, "Plaintiff has violated its own restrictions in suing for foreclosure of Hern's home and seeking a personal judgment against Defendant Hern," this statement was not alleged as a separate cause of action and was made "in the context of a host of facts alleged by Hern to be part of the common law tort of unreasonable collection practices." Hidden Forest, however, did not specially except to Hern's pleadings. *See* TEX. R. CIV. P. 90. In the absence of special exceptions, a petition should be construed liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). We therefore hold that in the absence of special exceptions, Hern pleaded information specific enough to provide Hidden Forest with notice of the causes of action for which Hern sought relief. *See id*. at 896-97 (holding Texas follows "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from pleading nature and basic issues in controversy and what testimony will be relevant); *see also Roark v. Allen*, 633 S.W.2d 804, 809-10 (Tex. 1982).

Alternatively, Hidden Forest contends that even if Hern had properly pleaded a cause of action for breach of restrictive covenants against Hidden Forest, there is no evidence to establish that Hidden Forest breached its own covenants. Section 8 of Article IV of the Declaration, titled "Effect of Nonpayment of Assessments: Remedies of the Association," provides:

---

[3] Hern alleged that Hidden Forest breached its own restrictive covenants by seeking both foreclosure of Hern's home and monetary damages. Section 8 of Article IV of the Declaration provides that "[t]he Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the property."

> Any assessment not paid within thirty (30) days after the due date shall bear interest from the due date at the rate of eight percent (8%) per annum. **The Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the property.** No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Lot.

(emphasis added). At trial, Hern argued that this language allows Hidden Forest to seek either a money judgment or a lien against a delinquent owner, but not both; thus, Hern argued that Hidden Forest violated its own covenant when it filed suit against him seeking both a lien and a money judgment. The jury was asked whether "Hidden Forest Homeowners Association materially breached the Restrictions as to Mr. Hern in connection with Section 8 (page 6-7) of the Restrictions (Exhibit 1)?" Hidden Forest objected to the submission of this question; the jury answered "yes."

Addressing the primary issue in dispute—whether Hidden Forest breached the Declaration's restrictive covenant when it filed suit against Hern seeking both a foreclosure lien and individual liability—requires us to interpret the language of the restrictive covenant as a matter of law. *See Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). Interpretation of a writing is a legal matter that we review de novo. *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App.—San Antonio 2008, no pet.); *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, pet. denied). Our primary goal is to give effect to the written expression of the parties' intent. *See Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 741 (Tex. 1998); *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied). Covenants are to be liberally construed, giving effect to the intent and purposes of the restrictions. TEX. PROP. CODE ANN. § 202.003 (West); *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Hidden Forest denies that the Declaration prohibits it from seeking both foreclosure on its lien and a personal judgment against a delinquent owner. We agree. Although the clause at issue contains the word "or," which is usually used in the disjunctive sense, *see Spradlin v. Jim Walter Homes, Inc*., 34 S.W.3d 578, 581 (Tex. 2000), it does not mandate that Hidden Forest elect one remedy to the exclusion of the other. *See Underwriters at Lloyds of London v. Harris*, 319 S.W.3d 863, 866 (Tex. App.—Eastland 2010, no pet.) (the word "or" does not automatically create a choice between two mutually exclusive options). Because the clause provides that Hidden Forest "may" bring an action at law or foreclose the lien, the language of the covenant does not expressly preclude seeking both causes of action at the same time. In fact, the plural title of section 8, "Remedies of the Association," implies that Hidden Forest is not limited to a single remedy. Reading the entirety of the Declaration illustrates that its drafters intended to give Hidden Forest the power to enforce the covenants and restrictions "by any proceeding at law or in equity." Further, the "one recovery" rule would prohibit Hidden Forest from receiving a double recovery in the event it brings both causes of action. Accordingly, we conclude as a matter of law that the Declaration does not expressly prohibit Hidden Forest from seeking both a foreclosure of its lien and a money judgment against a delinquent owner. We therefore sustain this issue on appeal.

Because we are reversing Hern's recovery for breach of the restrictive covenants, we must examine Hidden Forest's appellate issue related to Hern's counterclaim for unreasonable collection practices. *See Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 244 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). When a judgment is reversed on appeal on one theory of recovery, a party may seek recovery under an alternative theory that the jury found in its favor at the trial court level. *Dynegy, Inc. v. Yates*, 345 S.W.3d 516, 534 (Tex. App.—San

Antonio 2011, no pet.) (citing *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 274 (Tex. 1995)). The appellate court should consider the alternative theory and, if possible, render judgment thereon instead of remanding to the trial court for rendition of judgment under an alternative theory. *Haney*, 987 S.W.2d at 244.

### Hern's Second Counterclaim: Unreasonable Debt Collection

The jury was asked whether Hidden Forest—through its agents and/or attorneys—engaged in unreasonable collection practices against Hern. No accompanying definitions were submitted. The jury answered "yes," and further found that $11,000 would reasonably compensate Hern for his damages proximately caused by such unreasonable collection practices.[4] On appeal, Hidden Forest alleges that there is no evidence to support one or more elements of Hern's counterclaim for unreasonable debt collection practices.

An appellant challenging the legal sufficiency of the evidence to support a finding on an issue for which it did not have the burden of proof must show that there is no evidence to support the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). When reviewing a legal sufficiency challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.*

Unfair collection practices is an intentional tort derived from the common law. *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.); *see Duty v. Gen.*

---

[4] Hern presented no evidence of physical or mental damages incurred as a result of Hidden Forest's collection efforts; instead, the jury was instructed that it may consider "Hern's attorneys fees reasonably and necessarily incurred in responding to such practices as damages if such fees were incurred as a proximate cause of such unreasonable collection practices." Hern was not awarded exemplary damages on this claim because the jury found that Hern's damages did not result from malice by Hidden Forest.

*Fin. Co.*, 154 Tex. 16, 273 S.W.2d 64, 66 (1954). The Supreme Court of Texas has not directly addressed the elements to be proven in an action for unfair collection practices. *See, e.g., Duty*, 273 S.W.2d at 66 ("A decision of the case before us does not require that we undertake to outline the limits to which such a creditor may go, but we do hold that resort to every cruel device which his cunning can invent in order to enforce collection when that course of conduct has the intended effect of causing great mental anguish to the debtor, resulting in physical injury and causing his loss of employment, renders the creditor liable to respond in damages."); *Moore v. Savage*, 362 S.W.2d 298, 298–99 (Tex. 1962) (per curiam) (refusing to review the definition of "unreasonable collection efforts" because the issue was not preserved for appeal), ref'g appeal from 359 S.W.2d 95, 96 (Tex. Civ. App.—Waco 1962, writ ref'd n.r.e.). While the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case, a plaintiff must generally prove that "[a] defendant['s] debt collection efforts 'amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'" *EMC Mortg. Corp.*, 252 S.W.3d at 868-69.

Texas courts have found the following evidence sufficient to state a cause of action for unreasonable debt collection: sending a large man to the plaintiff's home, who "yelling and screaming, demanded the keys to the house, and told the [Plaintiff's] family to get out." *EMC Mortg. Corp.*, 252 S.W.3d at 864, 870; falsely accusing the plaintiff of committing a crime to collect a debt, *Lloyd v. Myers*, 586 S.W.2d 222, 227 (Tex. Civ. App.—Waco 1979, writ ref'd n.r.e.); sending a large man to the plaintiff's home, who stood over the plaintiff shouting, shaking his finger and calling him a liar, *Credit Plan Corp. of Houston v. Gentry*, 516 S.W.2d 471, 475 (Tex. Civ. App.—Houston [14th Dist.] 1974) *rev'd on other grounds* in *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex. 1975); sending a representative to the plaintiff's home,

confronting and embarrassing the plaintiff's fiancée in front of social guests, *Bank of N. Am. v. Bell*, 493 S.W.2d 633, 635 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ); calling the plaintiff five times in one night, with the final call including a threat of personal violence, *Pioneer Finance & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.). Texas courts have also held that it is unreasonable to persist in collection efforts once the debtor has informed the collector/lender that the debt has been paid in full. *See Pullins v. Credit Exch. of Dallas, Inc.*, 538 S.W.2d 681, 683 (Tex. Civ. App.—Waco 1976, writ ref'd n.r.e.) (holding that repeated and harassing efforts to collect $50 debt were unreasonable where plaintiff consistently asserted debt was paid). The Fifth Circuit has observed that the tort of unreasonable collection is intended to deter "outrageous collection techniques." *McDonald v. Bennett*, 674 F.2d 1080, 1089 n.8 (5th Cir. 1982).

Hern alleges that the following actions by Hidden Forest amounted to unreasonable collection efforts: Hidden Forest failed to accept payment of assessments in advance; after Hern returned from overseas to San Antonio and was served with a lawsuit, Hidden Forest refused to accept payment of the assessments and attorney's fees from Hern that exceeded what he owed Hidden Forest; Hidden Forest refused to accept undisputedly owed assessments from Hern to limit the dispute to attorney's fees, after which it continued to sue Hern for such fees and charge late fees; Hidden Forest failed to monitor or check its attorney's fees in violation of its bylaws to monitor its agents, when Hern, shortly after being sued, repeatedly asked for proof of the high amount of attorney's fees; Hidden Forest would not accept payments of assessments as they became due every six months after the lawsuit was filed.

Considering the totality of these circumstances, we cannot conclude there is any evidence to support the jury's finding that Hidden Forest engaged in unreasonable collection practices

against Hern. Although we do not condone Hidden Forest's refusal to accept Hern's prepayment and subsequent settlement offers, we cannot say that its collection efforts were harassing or outrageous. Hidden Forest did not repeatedly call Hern or send letters to his home or business. While Hern attempted to tender payments for amounts that he claims were more than due and owing, the proposed payments were still less than that demanded by Hidden Forest. *Compare Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010) ("While the precise sum the [plaintiffs] owed is in dispute, a reasonable trier of fact could only find that [plaintiffs] were in default.") *with Pullins*, 538 S.W.2d at 682-83 (debt appeared to be paid in full prior to collector's harassing efforts). And although it is arguable that Hidden Forest was unreasonable in claiming such a high amount of attorney's fees, there is no evidence that Hidden Forest sought excessive attorney's fees for the purpose of inflicting mental anguish and bodily harm on Hern. *See EMC Mortg. Corp.*, 252 S.W.3d at 868 (unreasonable collection is an intentional tort). On this record, we conclude there is no evidence that Hidden Forest engaged in the common law tort of unreasonable debt collection. *See City of Keller*, 168 S.W.3d at 827; *see also Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Accordingly, Hidden Forest's first issue is sustained. Given our resolution of the first two issues, we need not address Hidden Forest's third issue regarding settlement offers.

### *Reasonable Attorney's Fees*

Finally, Hidden Forest maintains that the trial court erred by not setting aside the jury's finding on the amount of reasonable fees for necessary services of Hidden Forest's attorneys, because it was against the great weight and preponderance of the evidence. A party challenging the factual sufficiency of a jury finding upon which that party had the burden of proof must demonstrate that "the adverse finding is against the great weight and preponderance of the

evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We must first examine the entire record to determine if there is some evidence to support the finding. *Id*. at 241-42. If there is, we must then determine whether "the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence clearly supports its non-existence." W. Wendell Hall, *Hall's Standards of Review in Texas*, 42 ST. MARY'S L. J. 1, 42 (2010) (quoting *Castillo v. U.S. Fire Ins. Co.*, 953 S.W.2d 470, 473 (Tex. App.—El Paso 1997, no writ)). Regardless of whether the "great weight" challenge is to a finding or a nonfinding, "[a] court of appeals may reverse and remand a case for new trial [only] if it concludes that the jury's 'failure to find' is against the great weight and preponderance of the evidence." *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989).

The reasonableness of attorney's fees is ordinarily left to the trier of fact, and a reviewing court may not substitute its judgment for the jury's. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009); *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam). Factors to be considered in determining the amount of attorney's fees to be awarded include the following: (1) the time and labor required, novelty and difficulty of the questions presented, and the skill required; (2) the likelihood that acceptance of employment precluded other employment; (3) the fee customarily charged for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the expertise, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.

1997). "A reasonable fee is one that is not excessive or extreme, but rather moderate or fair." *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010).

At trial, counsel for both parties testified concerning attorney's fees. Newton, a shareholder with Allen, Stein & Durbin, and lead counsel for Hidden Forest, testified that his fees through trial were $25,000 based upon his training, education, and experience, and considering the time and labor involved, novelty of question involved, the skill required to perform the services, and the fact that the fee arrangement with the client was a contingency fee. Itemized billing records for all of the attorneys and legal staff working on the case were admitted into evidence. Newton testified that he personally spent 75 hours on the case, his associate spent over twelve hours on the case, and his legal assistant spent almost 26 hours. Newton stated that shareholder attorneys in his firm charge $250.00 per hour, associate attorneys bill at a rate of $200.00 per hour, and legal assistants charge $125.00 per hour.

Counsel for Hern, Peter L. Kilpatrick, testified that the attorney's fees sought by Hidden Forest were unreasonable and should amount to $0. The jury awarded Hidden Forest $728.00 in attorney's fees for preparation and trial, $6,250.00 in attorney's fees for appeal to the court of appeals, and $2,500 for appeal to the Supreme Court of Texas.

We recognize there was no evidence controverting Newton's hourly rate; however, the trier of fact is not required to award attorney's fees equal to those testified to at trial, even when that testimony is uncontradicted. *See Hicks Oil & Butane Co. v. Garza*, No. 04-05-00836-CV, 2006 WL 2263896, at *4 (Tex. App.—San Antonio Aug. 9, 2006, no pet.) (mem. op.) (affirming award of attorney's fees that was substantially lower than amount unequivocally testified to at trial); *Inwood N. Homeowners' Ass'n, Inc. v. Wilkes*, 813 S.W.2d 156, 157-58 (Tex. App.— Houston [14th Dist.] 1991, no writ) (affirming award of $500 in attorney's fees to plaintiff who

presented undisputed evidence of approximately $1,500 in attorney's fees where small amount in controversy was an "attendant circumstance tending to cast suspicion on the uncontradicted evidence regarding the attorney's fee"). Here, the jury was aware of the simplistic nature of Hidden Forest's case, which merely sought to recover assessments that Hern admitted he had not paid. The amount Hidden Forest sought in attorney's fees was more than 26 times the amount it recovered due to Hern's failure to pay assessments. The jury could have rationally determined that 3.78 hours was a reasonable amount of time to expend in legal services for this case (dividing $728 awarded in attorney's fees by Newton's hourly rate of $250). *See Travis Law Firm v. Woodson Wholesale, Inc*., No. 14-07-00204-CV, 2008 WL 4647380, at \*4-5 (Tex. App.—Houston [14th Dist.] Oct. 21, 2008, no pet.) (mem. op.) (holding testimony of $50,887.89 in attorney's fees was contradicted by attendant circumstances, i.e., fee sought by firm was more than 84 times the principal amount firm recovered, and affirming award of $1,500 in attorney's fees). Accordingly, we hold that the jury's award of $728 in attorney's fees for preparation and trial is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Hidden Forest's fourth issue.

## CONCLUSION

Based on the foregoing reasons, we reverse the judgment of the trial court insofar as it relates to Hern's counterclaim for breach of the restrictive covenants, and render judgment that Hern take nothing on his counterclaims. We affirm the award of attorney's fees to Hidden Forest.

Phylis J. Speedlin, Justice