**BANK OF NORTH AMERICA, Appellant,**

v.

**Dudley BELL, Jr., Appellee.**

No. 732.

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 28, 1973.

Supplemental Opinion April 11, 1973.

Donald W. Callahan, Frank C. Collins, Jr., Callahan, Mulvihill & Collins, Fred A. Collins, Houston (on appeal only), for appellant.

James H. Campbell, Quinnan H. Hodges, Houston (on appeal only), for appellee.

CURTISS BROWN, Justice.

This is an unreasonable collection efforts case.

In answer to special issues the jury found: (1) defendant made unreasonable collection efforts; (2) such efforts proximately caused plaintiff mental pain and physical illness; (3) actual damages; (4) medical expenses; (5) future medical expenses; (6) the unreasonable collection efforts were actuated by malice; and (7) exemplary damages. On the only defensive issue submitted or requested the jury failed

to find that appellee had failed to obtain insurance on the boat in compliance with the security agreement. The trial court on defendant's motion disregarded the jury's findings of $1,000 on future medical expenses and the plaintiff agreed to a reduction of past medical expenses to $195 in disregard of the jury's finding of $1,000. Judgment was entered for the plaintiff for $15,000 actual damages, $50,000 exemplary damages, $195.00 past medical and $200 property damage.

From this judgment defendant duly perfected this appeal.

Appellant complains alternatively that the jury's finding of unreasonable collection efforts was against the great weight of evidence or supported by insufficient evidence.

Appellee Bell (Bell) purchased a boat and financed his purchase through the appellant Bank of North America (Bank). The note was in the amount of $7,542.00 and was secured by the boat in question. The first payment on the note was due July 1, 1968. *Before* this first payment became due the executive vice-president of Bank wrote to the plaintiff that "(b)ecause you seem to be unhappy with the way the loan was drawn up" the Bank was accelerating his loan and demanding full payment within ten days. Aside from the unsupported statement in the letter there is no evidence that in fact Bell was unhappy "*with the way the loan was drawn up*". Before the first payment became due the Bank instituted suit on June 26 against Bell for title and possession of the boat and undertook to sequester same.

Bell's fiancee was not involved in the transaction personally. However, the executive vice-president of Bank undertook to contact her and her employer concerning the matter. She was called in by her employer under circumstances that would be reasonably calculated to embarrass her and Bell. This same officer of the Bank called her at home as well as at work. He visited her on a weekend and in the presence of her friends with whom she was playing cards inquired about Bell, his whereabouts and that of the boat in question. He threatened her with penalties involved for concealing evidence. He contacted Bell and his fiancee on numerous occasions. He started a course of phone calls, contacts and threats about the boat. He called Bell at his home and at his fiancee's residence. In one ten day period he made 20 to 23 phone calls to Bell. He contacted the apartment manager where Bell lived. He called friends of Bell and he called the boat company. He visited the apartment managers of the apartments involved and sent and accompanied repossessors searching for the boat. He threatened Bell that if he did not give up the boat he would file criminal charges and place him in jail.

In the suit instituted before the first payment on the note was due the Bank incorrectly claimed that appellee had failed to provide insurance coverage as required. As a matter of fact the applicable insurance was in force at all material times and had been taken out with an insurance agent who was a director of Bank.

An examination of other wrongful collection cases where recovery has been allowed indicates that conduct constituting unreasonable collection efforts may vary from case to case. Having reviewed all the evidence pursuant to the mandate of the Supreme Court of Texas of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952) we overrule appellant's contentions that the answer of the jury to special issue no. 1 was against the overwhelming weight and preponderance of the evidence and supported by insufficient evidence.

Appellant's second point of error complains of the jury's finding of 'malice' "because such answer is not supported by the evidence, or alternatively is against the overwhelming weight and preponderance of the evidence and there is insufficient evidence to support the jury's answer to this special issue."

A leading case in connection with "malice" is the Supreme Court case of Ware v. Paxton, 359 S.W.2d 897 (Tex. Sup.1962). The Supreme Court there held that "(w)here the collection methods of a lender cease merely being unreasonable and take on the character of malicious and wanton conduct is a matter of *degree*." (emphasis added). In the case at hand the executive vice-president of Bank informed Bell that the Bank's conduct was motivated by the fact that someone at the Bank was "mad" at him. Since the collection campaign began before any default of Bell no other explanation of the conduct is apparent. Bank did not undertake to deny this testimony or make any other explanation of the procedures adopted. The failure of a litigant to rebut the other party's version of an occurrence when he has the means available to do so normally justifies an inference that such evidence would not have strengthened his case. American General Ins. Co. v. Nance, 60 S.W.2d 280 (Tex.Civ.App., Dallas 1933, writ ref'd). As already recounted, the Bank made visits to the home of Bell, his fiancee and apartment managers; confronted and embarrassed the lady in front of her social guests; made 20 or more telephone calls to Bell in a 10-day period; and threatened him with criminal charges. Insofar as the second point of error may be construed as a "no-evidence" it is overruled. Also, in reviewing all of the evidence in compliance with the mandate of the Supreme Court in the exercise of our fact finding jurisdiction we also find that the answer to special issue number 6 was not against the preponderance of the evidence or insufficiently supported. In re King's Estate, supra.

Appellant's third point of error presents the contention that the exemplary damages award is excessive. Significantly appellant makes no complaint about the jury's finding of actual damages. While appellant does contend that the $50,000 exemplary finding bears no reasonable relation to the actual damages found we are unable to agree with this contention. The ratio of the award of exemplary damages to actual damages is approximately 3.3 to 1. Such ratio is certainly reasonable under many cases supporting much higher ratios.

However, we do not feel confined to that test at all. We perceive it to be our duty to examine this record to determine whether the exemplary award is excessive standing alone and without reference to the finding on actual damages.

In making this assessment we are mindful that we should respect the verdict of the finder of fact who had the opportunity to see and hear the parties and witnesses. We further fully appreciate that exemplary damages are peculiarly within the province of the jury. However, as required by the Supreme Court case of Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835, 840 (1959), this Court must "exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injuries sustained, and treat the balance as excess". The amount in excess of that reasonable compensation figure should be ordered remitted. Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993, 994 (1916).

We further acknowledge that exemplary damages are not intended as compensation for "injury". Such award is meant to serve as an example that will deter defendant and others and thereby protect the public interest. Cotton v. Cooper, 209 S.W. 135 (Tex.Com.App.1919, opinion adopted). Due regard should be given to the party's inconvenience, attorney's fees, mental anguish, sense of being wronged and insulted, and other losses too remote to be considered under actual damages. Bisso v. Southworth, 71 Tex. 765, 10 S.W. 523 (1888); Pan American Petroleum Corporation v. Hardy, 370 S.W.2d 904 (Tex. Civ.App., Waco 1963, writ ref'd n. r. e.).

After careful consideration of all of the facts and with due regard to the weight that properly should be given to the findings of the jury and the superior posi-

tion of the trial judge to evaluate the parties and circumstances before him, we have determined that the exemplary damages award in this case is excessive and that the remittitur should be required. Considering all appropriate factors we have reached the conclusion that the award in excess of $15,000 for punitive or exemplary damages is excessive and that a remittitur of $35,000 should be required.

In accordance with our best judgment this amount is the highest that could reasonably be allowed to stand taking into account the public policy of deterring the Bank and others from similar misconduct and considering those elements of damages that are permissible here but which would be too remote or intangible to be allowed as actual damages. In our view each case should stand on its own base. No case is exactly like another. We have considered all of the facts in the record in coming to this determination. Without feeling bound by their specific circumstances we have taken note of the holding of a number of Texas cases.[1]

■ Appellant's fourth and final point of error is based upon the claim that it was error for the trial court not to allow the introduction of an *indictment* on charges of bribery and arson. An indictment is not admissible under our system of jurisprudence. The trial court allowed evidence on all facts except the indictment itself. Certainly the exclusion of an indictment under these circumstances could not amount to an abuse of discretion constituting reversible error. Even if the tendered evidence had some probative value its po-

tential for creating undue prejudice in the minds of the jurors exceeded its value. Clearly in this area the trial judge has a wide discretion. 2 C. McCormick & R. Ray, Texas Evidence Section 1481 (2d Ed. 1956).

Judgment of the trial court will be affirmed if appellee files within 14 days from this date a remittitur of $35,000 of the exemplary damages. If within that time the remittitur is so filed then the judgment shall be reformed and affirmed in accordance therewith. If the remittitur is not filed as indicated then the judgment shall be reversed and the cause remanded. Tex.R.Civ.P. 440.

All costs of appeal are charged and taxed against appellee.

## SUPPLEMENTAL OPINION ON FILING OF REMITTITUR

On March 28, 1973, we indicated by an opinion in writing that if appellee Dudley Bell, Jr. would file a remittitur of $35,000 within fourteen days, the judgment of the trial court would be reformed and as reformed would be affirmed; and that otherwise the judgment of the trial court would be reversed and the cause remanded. Appellee has filed the suggested remittitur of $35,000.

Accordingly, as of this date the judgment of the trial court is reformed by deducting the amount of $35,000 from the judgment recovered by appellee, and, as so reformed, is affirmed.

The costs of this appeal are taxed against appellee.

1. Houston-American Life Insurance Co. v. Tate, 358 S.W.2d 645 (Tex.Civ.App., Waco 1962, no writ); Ware v. Paxton, 359 S.W.2d 897 (Tex.Sup.1962), Court of Civil Appeals' opinion 352 S.W.2d 520 (Tex.Civ.App., Dallas 1961); Riley v. Industrial Finance Service Co., 157 Tex. 306, 302 S.W.2d 652 (1957); Wright v. E–Z Finance Co., 267 S.W.2d 602 (Tex. Civ.App., Dallas 1954, writ ref'd n. r. e.); United Finance & Thrift Corp. v. Smith, 387 S.W.2d 752 (Tex.Civ.App., Tyler 1965, writ ref'd n. r. e.); Signature Indorsement Company v. Wilson, 392 S.W. 2d 484 (Tex.Civ.App., Texarkana 1965, writ ref'd n. r. e.).