Jay J. ARMES, d/b/a The Investigators,
Appellant,

v.

Rita P. CAMPBELL, Appellee.

No. 6916.

Court of Civil Appeals of Texas,
El Paso.

June 25, 1980.

Rehearing Denied July 30, 1980.

See 608 S.W.2d 692.

Marshall I. Yaker, Dudley & Dudley, Paul W. Dudley, William C. Dudley, El Paso, for appellant.

Calhoun, Morton, Deason & Preslar, Charles A. Deason, Jr., El Paso, for appellee.

## OPINION

OSBORN, Justice.

Rita P. Campbell sued Jay J. Armes and, based upon jury findings, recovered judgment against him for actual and exemplary damages resulting from findings of assault and false imprisonment. We affirm.

This case arises out of a custody dispute between Rita Campbell, the paternal grandmother of Jason Campbell, and Linda Sweet, the mother of the child, who hired Jay J. Armes, a private investigator, to assist her in obtaining physical possession of Jason. Following a divorce between the parents, Ken and Linda Campbell, they entered into a written agreement giving Linda custody of a daughter of the marriage and Ken custody of their son, Jason. Subsequently, Ken entered into an agreement with his parents in which he relinquished custody of Jason to the grandparents. After Linda remarried, she decided to locate her son, and she came to El Paso in December, 1977, with her brother and brother-in-law and hired Mr. Armes to assist her.

On December 21, 1977, Rita Campbell received a telephone call while at work, supposedly from the Judge in Oklahoma who granted Ken and Linda's divorce, advising that she would be arrested for kidnapping. Actually, the Judge had died more than two years prior to this telephone call. About 10:00 p. m. on December 21, 1977, Mrs. Campbell received another telephone call at her residence, advising it was from a deputy sheriff who claimed he had a warrant for her arrest. In fact, there was no warrant for her arrest. Mrs. Campbell got Jason out of bed and decided to drive to her husband's place of employment. Shortly after leaving her house, she said she was

followed by a pick-up truck with Oklahoma license plates. Later, she was followed by a car driven by Mr. Armes. She testified he finally succeeded in forcing her to pull over to the curb on Dyer Street. She said at that time he told her she was under arrest for kidnapping and, when she started to leave, he told her: "Don't run! We'll get you." After a high speed chase down War Road, the engine in Mrs. Campbell's car exploded, and she was again required to stop, this time on Sun Valley Road. The pick-up then stopped in front of her car, and Mr. Armes' car was stopped directly behind her car. She sought help on her "CB" radio. When the City police officers arrived, she was very upset. After the officers reviewed the papers provided to them by both the mother and grandmother, they took Jason and gave him to Linda and she left.

The jury found Mr. Armes did falsely imprison Mrs.' Campbell by preventing her from leaving Sun Valley Road, that he committed an assault upon her by chasing her on War Road, and that his conduct caused property damage to her vehicle. The jury assessed the damages at $650.00 for the car, $2,000.00 for false imprisonment, $3,000.00 for assault, and found exemplary damages of $7,500.00 for false imprisonment and $12,500.00 for assault. Judgment was entered on this verdict.

Along with other general instructions to the jury, the Court included the following:

> You are instructed that the actions or conduct of the El Paso Police Department or the effect of what they did or failed to do in this case has no bearing whatsoever on whatever answers you may make to any of the following special issues.

By his first point of error, the Appellant asserts the trial Court erred in giving such instruction when the conduct of the police was substantial, was beyond the control of the Defendant, was an independent, intervening cause, and the instruction was a comment on the weight of the evidence.

Although not necessarily a model instruction, the Court was basically telling the jury that Mr. Armes was only responsible for his conduct and not that of the Police Department, and that, in deciding on his responsibility, to limit their answers to what he did and not include what the police "did or failed to do in this case." To that extent, we can understand why the instruction was requested and why it was given. Obviously, the police conduct did play a major role in the end result of what was sought to be accomplished. They, in effect, took the child from the grandmother and gave him to the mother. The police officers who testified readily acknowledged that they did not act properly and should not have intervened as they did. Thus, the instruction was given so the jury would not hold Jay J. Armes accountable for any wrongful conduct upon the part of the police.

■ Nevertheless, a comment on the weight of the evidence would be improper and in violation of Rule 277, Tex.R.Civ.P., which prohibits a direct comment on the weight of the evidence. Prior to the 1973 amendments of the Rules of Civil Procedure, Rule 272 required the trial judge to "frame his charge as to * * * not therein comment on the weight of the evidence * * *." To do so could constitute reversible error. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943); Hodges, Special Issues Submission in Texas sec. 10 (1959). The 1973 amendments placed the prohibition against a comment "directly on the weight of the evidence" in Rule 277, Tex.R.Civ.P., and provided that it shall not be objectionable if the charge "incidentally constitutes a comment on the weight of the evidence." A comment occurs, either in an instruction or in an issue, when the trial judge indicates an opinion as to the verity or accuracy of the facts in inquiry. *McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43 (Tex.1978); *Metal Structures Corporation v. Plains Textiles, Inc.*, 470 S.W.2d 93 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.).

■ We recognize that the trial court is permitted and, in fact, required to "submit such explanatory instructions and definitions as shall be proper to enable the jury

to render a verdict * * *." Rule 277, Tex.R.Civ.P. This rule does give greater latitude to the trial judge than existed before the rules were adopted. *Levermann v. Cartall,* 393 S.W.2d 931 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). Determining the validity of such an objection to the charge requires that we examine the charge in its entirety. *Briseno v. Martin,* 561 S.W.2d 794 (Tex.1977). When we do so, it is obvious that the issues inquired only about the conduct of Mr. Armes, and all the issues were as to his conduct prior to the time the police arrived at the scene. Thus, the instruction properly limited the jury's inquiry and prohibited their consideration of acts for which Mr. Armes could not be responsible after the police arrived. We conclude there was no error in giving the instruction complained about. *City of Beaumont v. Henderson,* 349 S.W.2d 301 (Tex.Civ.App.—Beaumont 1961, no writ). The instruction was not a comment on the weight of any issue upon which Appellant's liability is based, and it had the effect of excluding from the jury's consideration conduct for which he should not be liable. Point of Error I is overruled.

■ Point of Error II asserts there is no evidence that the Defendant assaulted the Plaintiff by chasing her. Under a "no evidence" point, we consider only the evidence and inferences tending to support the jury finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). The general nature of the offense of "assault" is set forth in Prosser, Law of Torts sec. 10 (4th ed. 1971), as follows:

> The interest in freedom from apprehension of a harmful or offensive contact with the person, as distinguished from the contact itself, is protected by an action for the tort known as assault. No actual contact is necessary to it, and the plaintiff is protected against a purely mental disturbance of his personal integrity. This action, which developed very early as a form of trespass, is the first recognition of a mental, as distinct from a physical, injury. [Footnotes omitted].
> * * *

> *  *  *  *  *  *

Any act of such a nature as to excite an apprehension of a battery may constitute an assault. * * *

In enumerating conduct which may constitute an assault, Professor Prosser includes chasing a person in a hostile manner.

■ Mrs. Campbell testified that, after the late evening telephone call about the warrant for her arrest, she got Jason in the car and left for her husband's place of employment. At first, she was followed by a pick-up and then a car. She went through a residential area and drove down Dyer Street real fast. The car that was following pulled up beside her twice, and then backed off some, and the third time it pulled up beside her she stopped and got out. She said the other car "came right up beside me on the driver's side as if he were going to force me over." She testified Mr. Armes got out of the other car, inquired about the presence of Jason, and then told her she was under arrest for kidnapping. She then ran to her car and at that time he told her "Don't run! We'll get you." She drove off at a high speed, and shortly thereafter her engine blew out. After seeking help on her "CB" radio, she stopped on Sun Valley Road. She testified Mr. Armes pulled up behind her and the white pick-up "whipped in front of me. And I knew I was trapped. I just really went to pieces then." She was "very scared" and "crying pretty bad."

Considering only the evidence favorable to the verdict, it seems clear that the high speed chase at a time when Mrs. Campbell was concerned about the custody of her grandson did constitute an assault, and there is some evidence to support the jury finding. Point of Error II is overruled.

The third point asserts that there is no evidence to support the jury finding that Defendant falsely imprisoned Plaintiff, and the sixth point contends the evidence is insufficient to support that finding. The jury found that the false imprisonment occurred when Mrs. Campbell was prevented from leaving Sun Valley Road where her

car finally stopped after the engine blew up.

As noted in Prosser, Law of Torts, supra, sec. 11, this cause of action "protects the personal interest in freedom from restraint of movement." In considering the character of the defendant's act which will give rise to a cause of action, Prosser says:

> The restraint may be by means of physical barriers, or by threats of force which intimidate the plaintiff into compliance with orders. It is sufficient that he submits to an apprehension of force reasonably to be understood from the conduct of the defendant, although no force is used or even expressly threatened. The plaintiff is not required to incur the risk of personal violence by resisting until it actually is used. * * * [Footnotes omitted].

■ In passing on the "no evidence" point, we consider only the evidence and inferences favorable to the verdict, and in passing on the "insufficient evidence" point we consider all the evidence. *Garza v. Alviar*, supra. Mrs. Campbell had been told, in the telephone call a short time before, of a warrant for her arrest. She was told by Mr. Armes when she stopped on Dyer Street: "We'll get you." She recognized at this late hour of night there was an effort being made to take Jason from her. We believe that, under the circumstances where she was alone with the boy and her car would not run, she submitted to conduct reasonably to be understood from the prior acts and conversation as amounting to an arrest and apprehension. The jury had an opportunity to see the witnesses and understand the effort made to obtain Jason, and we conclude the evidence is sufficient to support their finding of false imprisonment. Points of Error III and VI are overruled.

■ The fourth point of error attacks both the legal and factual sufficiency of the evidence to support the jury finding that Defendant's conduct caused property damage to Appellee's vehicle. We pass on both issues under the test set forth in *Garza v. Alviar*, supra. Mrs. Campbell testified her car was in good condition prior to the high speed chase at which she drove in excess of 120 m. p. h. Mr. Hernandez, a mechanic who repaired the engine, said it blew "4 rods, 4 pistons and broke the cam shaft in pieces." He said that as a result "the engine was locked." He indicated that "if you rive that engine on the high RPM's that will cause that." This evidence was sufficient to support the jury finding, and Point of Error IV is overruled.

■ Point of Error V attacks the award of exemplary damages because there is no evidence of malice, wanton conduct or illegal activity by Defendant. The last point attacks the award of actual and exemplary damages as being grossly excessive. The jury was instructed that to award exemplary damages the conduct must have been done knowingly and willfully without just cause. Further, "willfully" was defined as meaning an act in bad faith, and with an intent to injure or in wanton and reckless disregard for the rights and interest of the person against whom the action was directed. There is no complaint about the Court's charge on this issue. In this case, there is no dispute but that Mr. Armes was hired to assist the mother in locating Jason. The jury found on sufficient evidence an assault and a false arrest. These are the very types of offenses which would normally result from intentional conduct. All of the circumstances and inferences would indicate a reckless disregard for the rights and interest of Mrs. Campbell. Quite often, child custody cases result in conduct designed solely for the purpose of obtaining the physical custody of a young child. But, that does not mean that the conduct is always proper or lawful. The law books are full of cases where parents and others have violated court orders and acted in bad faith in custody matters. A good faith effort to locate Jason did not require a 120 m. p. h. chase in the late hours of the night, particularly when no one had attempted to hide the child or avoid legal process and thereby prevent a proper court from deciding the custody issue in broad daylight under due process of law.

The award of exemplary damages is not one that can be measured by a definite standard, but it should normally be left to the sound discretion of the jury. *Gibson Discount Center, Inc. v. Cruze*, 562 S.W.2d 511 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.). In this case, one of the police officers described Mrs. Campbell's condition as being frightened, crying and hysterical. The jury's award of exemplary damages is not so disproportionate to the actual damages as to be excessive. *Lubbock Bail Bond v. Joshua*, 416 S.W.2d 523 (Tex.Civ.App.—Amarillo 1967, no writ). The actual damages are within the range generally assessed by juries in this type case. See: *Gibson v. Cruze*, supra; *J. C. Penney Company v. Duran*, 479 S.W.2d 374 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.); *Skillern & Sons, Inc. v. Stewart*, 379 S.W.2d 687 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.); *J. C. Penney Company v. Reynolds*, 329 S.W.2d 104 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.). Points of Error V and VII are overruled.

Appellee has one cross-point complaining of an order of the trial Court directing her to pay as court costs the sum of $350.00 to Dr. Dickey. After one motion for continuance had been agreed to, and the case re-set for trial in February, 1979, a second motion for continuance was filed on the grounds that Mr. Armes was seriously ill and would be unable to attend trial in February. Attached to the motion was an affidavit from Dr. Billy M. Dickey in which he stated that "Jay J. Armes is presently suffering from chronic esophagitis, a hiatal hernia, and chronic prostatitis." Counsel for Mrs. Campbell subpoenaed Dr. Dickey to testify at a hearing on the motion for continuance and, after the hearing, the Court, "being of the opinion that good cause exists for the granting of said continuance," entered an order granting a continuance for thirty days. Subsequently, an order was entered directing the payment of the fee to Dr. Dickey, about which the Appellee complains in her cross-point. The Legislature has set the amount of fees to be paid witnesses. Art. 3708, Tex.Rev.Civ. Stat.Ann., provides that "[w]itnesses shall be allowed a fee of one dollar for each day they may be in attendance on the court, and six cents for every mile they may have to travel in going to and returning therefrom * * *." We have been cited to no authority which permits or authorizes the Court to tax as costs fees for a witness other than that provided for in Article 3708. There being no authority for the Court's order of April 9, 1979, directing that the Plaintiff is ordered to pay as costs the sum of $350.00 to Dr. Dickey, the cross-point is sustained, and that order is set aside and held for naught.

The judgment of the trial Court is in all things affirmed.

PRESLAR, C. J., not sitting.