BAKER MARINE CORPORATION,
Appellant,

v.

Frank MOSELEY, Appellee.

No. 1982cv.

Court of Appeals of Texas,
Corpus Christi.

Aug. 26, 1982.
Supplemental Opinion Sept. 9, 1982.
Rehearing Denied Oct. 14, 1982.

Lev Hunt, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellant.

James M. Whitten, Sinton, for appellee.

Before BISSETT, UTTER and KENNEDY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a suit on an employment agreement instituted by Frank Moseley against Baker Marine Corporation. Trial to a jury resulted in a verdict in favor of the appellee, Frank Moseley, and the trial court entered judgment accordingly. From that judgment, the appellant, Baker Marine Corporation, has duly prosecuted this appeal. We affirm.

In 1975, Moseley began a company called Corpus Christi Fabricators. A large percentage of the work of this company was done for Baker Marine. Following the completion of the Baker Marine contract, Corpus Christi Fabricators had no more work to do and as a consequence was in financial difficulty. The business was sold to Baker Marine and renamed Baker Manufacturing. The sale of the business included an agreement that Moseley would be employed by Baker Marine to run and supervise Baker Manufacturing in the building of jacks (gear boxes) to be used in the construction of offshore rigs.

Baker Marine circulated a memorandum with respect to Moseley's compensation. The pertinent portion of the memorandum is as follows:

"To: S.M. Vaughan

From: Bill Geer

Date: July 27, 1978

Subject: Frank Moseley-Employment Compensation

At the time of the purchase of the assets of Corpus Christi Fabricators, Larry A. Baker, Sr. made the following deal with Frank for his compensation. It was agreed that he would get a guaranteed salary which would be an advance against any compensation that was to become due him. Frank would receive an amount equal to one-half of the difference between $150,000.00 and the total cost of performing all machine work to be done in connection with manufacture of the jacks (gear boxes). In determining such total cost, the general concept would be just as if the operation was owned by Frank; that is, included in cost would be all direct labor, indirect labor, and cost of working capital. Finally, an additional cost would be added in a reasonable amount for services performed by BMC employees in connection with Baker Manufacturing Company's operations.

\*   \*   \*   \*   \*   \*

The time Frank would be paid his one-half of the difference between the actual cost of the job and $150,000.00 would be at the completion of the job when all costs could be finally determined. However, we discussed that if during the progress of the job, he required advances we would be reasonable in making such advances.

All of the above, with the exception of the computation of work for miscellaneous, was to be done for the first two contracts only, with a commitment from BMC that after the first two contracts another arrangement would be made with Frank that was equally satisfactory, perhaps involving working on a percentage basis. Frank has indicated that the present arrangement is satisfactory and

would like to continue on this basis. My recommendation is also that this method of compensation computation be continued since it furnishes Frank an incentive to perform his work at the lowest possible cost."

The two contracts referred to were for jacks (gear boxes) for jobs labeled 04 and M11. While employed by Baker Marine, Moseley completed work on jobs 04, 05, 06, 08, 09, M11 and M14. Moseley testified that he completed jobs 07 and M15 to 65% of completion. This was the only agreement testified to by either appellant or appellee. Moseley testified that he thought that he would be working under the initial arrangement unless some other suitable agreement was reached. Moseley was paid approximately $117,000.00 for his work on jobs 04 and M11 and also for his work on 05 in accordance with the compensation arrangement. He was not paid anything on any of the other jobs he worked on other than his salary. At trial, Moseley introduced testimony showing that he was not owed anything on 05 or M11, that he was due $10,000.00 on 04 and that he was owed the following amounts on the jobs he had not been paid on: 06–$30,598.00; 08–$25,-554.00; 09–$23,032.50; M14–$20,300.00; 07 and M15–$49,749.96.

Moseley's claim was submitted to the jury in the following manner and the jury answered as follows:

## "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Defendant, BAKER MARINE CORPORATION, employed Plaintiff, FRANK MOSELEY, to do machining and miscellaneous work which included work on any one or more of the following jobs?

Answer "yes" or "no".

| Job | Yes | No |
|-----|-----|-----|
| 04 | X | |
| 06 | X | |
| 07 | X | |
| 08 | X | |
| 09 | X | |
| M14 | X | |
| M15 | X | |

## SPECIAL ISSUE NO. 2

If any or all of your answers in question No. 1 were "yes", answer the following question as to the rigs involved.

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence is owed by Defendant, BAKER MARINE CORPORATION, and unpaid to Plaintiff, FRANK MOSELEY, under terms of employment with regard to any of the following jobs.

Answer in dollars and cents, or "none".

| Job | $ | None |
|-----|-----|-----|
| 04 | $ 5,000 | |
| 06 | $20,000 | |
| 07 | $20,000 | |
| 08 | $20,000 | |
| 09 | $20,000 | |
| M14 | $20,000 | |
| M15 | $20,000 | |
| TOTAL | $125,000" | |

·The following instruction accompanied the special issues.

"A contract of employment is reached if the parties manifested assent to the agreement so that a reasonable person would have understood there to have been an offer of employment and an acceptance of employment supported by consideration. The agreement to perform by a promisee may constitute consideration. The agreement to pay by a promisor may constitute consideration."

Baker Marine duly objected to the aforementioned issues and instruction. The jury returned the verdict as shown and judgment was entered for Moseley in the amount of $125,000.00 with interest.

In its first point of error, Baker Marine claims that the trial court committed reversible error in submitting Special Issue No. 1 because it asks only if Baker Marine employed Moseley to work on various jobs without inquiring as to the terms and conditions of employment and also because it fails to make reference to any testimony or document, in particular, the memorandum of July 27, 1978.

Under Rule 277 as it currently exists, the trial court has great discretion in

submitting special issues subject only to the requirement that the issues submitted must fairly submit the disputed issues for the jury's determination. *Cactus Drilling Co. v. Williams,* 525 S.W.2d 902 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). In this regard, an issue is objectionable if it assumes a disputed fact in issue or is phrased such that it produces an ambiguous response. *Cactus Drilling v. Williams, supra.* It is objectionable if it is so structured that it comments on the weight of the evidence. *Texas Employers' Ins. Assoc. v. Percell,* 594 S.W.2d 182 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Armes v. Campbell,* 603 S.W.2d 249 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.).

■ In reviewing the trial court's submission of a case, the Supreme Court of Texas has made the following observation in *DeAnda v. Home Ins. Co.,* 618 S.W.2d 529 (Tex.1980):

> Rule 277, Tex.R.Civ.P. states: "It shall be discretionary with the trial court whether to submit separate questions with respect to each element of a case or to submit issues broadly." Such an exercise of discretion by a trial court should not be overturned unless there is a clear showing of abuse. See *State v. Norris,* 550 S.W.2d 386 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

This Court has similarly held that "Rule 277, T.R.C.P., requires the trial court to submit the special issues that control the disposition of the case and that are raised by the pleadings and the evidence. In this regard, the trial court is permitted broad discretion in the submission of such special issues." *Texas Gen. Indem. Co. v. Villanueva,* 619 S.W.2d 15 (Tex.Civ.App.—Corpus Christi 1981, no writ). Special Issue No. 1 as submitted inquired into the existence of employment of the plaintiff by the defendant with respect to several jobs. The only agreement testified to by both the appellee and witness for appellant was that set forth in the memorandum of July 27, 1978. The terms and conditions of employment were specifically set forth in the memorandum. The question for the jury was: Did the memorandum apply to subsequent jobs undertaken between the parties? The trial court fairly submitted the dispute of the parties and no abuse of discretion is shown.

Appellant cites this court to numerous cases anterior to the 1973 amendment to Rule 277 which liberalized the submission of cases. Such cases have either been made inapplicable to the instant case by the revision to Rule 277 or are distinguishable on their face.

Appellant cites this Court to *Grubb v. Grubb,* 525 S.W.2d 38 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.) where the defendant's failure to request an issue on a necessary element of assumption of the risk was held to not entitle the defendant to a finding on that issue. Such case is inapposite to the case at hand and has no application. Similarly, *Parker v. Keyser,* 540 S.W.2d 827 (Tex.Civ.App.—Corpus Christi 1976, no writ) involved a disjunctive submission for two separate and distinct defendants and is therefore inapplicable to this case. Appellant also cites this Court to a panoply of post 1973 cases all of which are distinguishable from the instant case.

■ Appellant contends in its second point of error that the trial court erred in submitting Special Issue No. 2 because it comments on the weight of the evidence. As previously noted, even under revised Rule 277, a special issue may not comment on the weight of the evidence. *Texas Employers' Ins. Assoc. v. Percell, supra; Armes v. Campbell, supra.* Appellant claims that the issue as worded assumes that money is owed to the plaintiff. We note that the issue as worded read:

> "If any or all of your answers in question No. 1 were "Yes", answer the following question as to the rig or rigs involved.
>
> What sum of money, *if any,* if paid now in cash, do you find from a preponderance of the evidence is owed by Defendant, BAKER MARINE CORPORATION, and unpaid to Plaintiff, FRANK MOSELEY, under the terms of employment with regard to any of the following jobs." (emphasis our own)

The instruction to the jury to answer Special Issue No. 2 only if they answered any or all of jobs inquired about in Special Issue No. 1, sufficiently qualified their response to Special Issue No. 2. We are unable to see how such an issue can constitute a comment on the weight of the evidence with such an instruction as well as the proviso, "if any", included in the manner as it was here.

Appellant objects to the instructions submitted in the charge in points three and four. Appellant claims that the instruction accompanying Special Issue No. 1 was incorrect in that it failed to instruct the jury on such issues as a meeting of the minds and mutual assent between the parties. Rule 277 provides that:

"In submitting the case, the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject to the objection that it is a general charge."

The instruction accompanying Special Issue No. 1 read as follows:

"A contract of employment is reached if the parties manifested assent to the agreement so that a reasonable person would have understood there to have been an offer of employment and an acceptance of employment supported by consideration. The agreement to perform by a promisee may constitute consideration. The agreement to pay by a promisor may constitute consideration."

In reviewing an instruction submitted by the trial court the test by which the instruction is measured is not merely whether it is a general charge, but whether it is a misstatement of the law as applied to the facts. *Forney v. Memorial Hospital*, 543 S.W.2d 705 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.).

Appellant contends in his fifth point of error that the cumulative effect of the submission of Special Issues Nos. 1 and 2 together with the instructions caused an improper verdict and judgment. We disagree. We hold the submission of the in-

struction and the issues were proper. Appellant's points of error one through five are overruled.

Appellant contends in its sixth and seventh points of error that the evidence was legally and factually insufficient to support the verdict and judgment as it relates to jobs 07 and M15. The two jobs in question were the two that were carried to only 65% completion yet the jury returned the same dollar amount on these rigs as damages as it did to the completed jobs. In reviewing a legal insufficiency or "no evidence" point, this court must examine only the evidence and inferences therefrom tending to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965): *Salazar v. Hill*, 551 S.W.2d 518 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). In reviewing a factual insufficiency point, this court must examine the entire record to determine if there is any evidence of probative value to support the findings of the jury. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The record reflects that the jury awarded the same amount as it did the completed rigs. Appellees own testimony indicates that jobs 07 and M15 were only 65% complete. The damages testified to were computed on a basis of the cost of the parts used and per cost estimate on the other completed jobs. Such testimony would seem to indicate that the jury's findings pertaining to jobs 07 and M15 were patently erroneous. However, in a case where the damages are the only reversible aspect of the judgment it becomes the duty of this Court to suggest a remittitur. *Houston American Life Ins. Co. v. Tate*, 358 S.W.2d 645 (Tex.Civ.App.—Waco 1962, no writ). In ordering a remittitur, the Appellate Court must exercise sound judicial discretion and judgment in determining what a reasonable amount of compensation will be for a given claim. *Bank of North America v. Bell*, 493 S.W.2d 633 (Tex.Civ.App.—Houston [14th Dist] 1973, no writ). In the instant case, reasonable damages for rigs 07

and M15 would have been $13,000 per job which is 65% of the damages found by the jury for a completed job.

The judgment of the trial court is AFFIRMED subject to appellee's filing a remittitur in the amount of $14,000.00 plus applicable interest. If no remittitur is filed within 20 days, the cause will be REVERSED AND REMANDED.

## SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellee Frank Moseley remit the sum of $14,000.00 out of the amount awarded to him as set forth in the original opinion. The appellee has filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with the opinion of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by the appellee so that the amount of judgment against the appellant is reduced to the sum of $111,000.00. Rule 439, T.R.C.P.

The judgment of the trial court as herein reformed is hereby AFFIRMED.