# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00414-CV

**Sandra Sue Hunter Reed, Appellant**

**v.**

**Daniel L. Hepker, Appellee**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
## NO. 23,388, HONORABLE JOHN M. DELANEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Daniel L. Hepker sued appellant Sandra Sue Hunter Reed and her brothers[1] to recover damages arising out of their alleged maintenance of a nuisance adjacent to Hepker's property. The jury found in favor of Hepker and awarded him compensatory damages of $45,000. The jury also awarded Hepker exemplary damages in the amount of $125,000, finding by clear and convincing evidence that Reed's conduct in causing and maintaining the nuisance was done with malice. In two issues on appeal, Reed challenges the relevance of evidence related to the conduct of David Fisher, whom she termed her "consultant," and the sufficiency of the evidence supporting the jury's award of exemplary damages. We will affirm.

---

[1] According to the judgment of the district court, Reed's brothers "did not appear in person as co-owners of the property and in lieu of a *nil decit* judgment, rode the coat tails of co-defendant Sandra Sue Hunter Reed's defense."

## BACKGROUND

The jury heard evidence that Reed owned a building in downtown Bastrop adjacent to a building owned by Hepker. The two buildings shared what Hepker termed "a party wall," a common wall connecting Reed's building and Hepker's building. Hepker testified that, because of a poorly-maintained roof and gutter system, Reed's building was suffering from significant water damage: the building was "very wet inside" and the wall that they shared "was pretty much rotted away." Hepker further testified, "It was pretty nasty, it was musty, smelly, wet. It was sad, really, what it was. It was just a total decayed mess in there."

Hepker went on to explain how, because of the shared wall, water that had entered Reed's building was penetrating into his building. Hepker testified that when it rained, "I had water coming across my floor, through my bathroom, down my walls, around my A.C. unit. It was very, very bad." Furthermore, vines from the wet environment in Reed's building were growing through the party wall into Hepker's building.

Kirby Meyer, a professional engineer who inspected both buildings, testified that the water penetration from Reed's building into Hepker's building could cause significantly more damage to Hepker's building in the future:

> I believe the water penetration is causing the damage ongoing, and has been for some time, and the second part of that opinion is that because of the structural deterioration, I'm actually concerned that the Hunter / Reed side may collapse some day. I don't know when, but it's well down the road. If it does collapse, just the act of the collapsing could affect the Hepker building in ways that I can't describe, but you don't want a building collapsing that's connected to another building.

2

Hepker testified that his attorney sent Reed a letter on April 14, 2000, asking her to take action to repair her roof and remedy the problems in her building that were causing damage to the shared wall. After receiving no response, Hepker filed this lawsuit alleging that Reed's building constituted a nuisance. In July 2002, after a bench trial in which Reed represented herself *pro se*, the district court rendered judgment in favor of Hepker. Reed filed a motion for new trial, alleging that she was denied her right to a trial by jury. The district court granted her motion. A jury trial was held beginning on May 27, 2003. Reed again represented herself *pro se*. The jury found in favor of Hepker, awarding him compensatory damages in the amount of $45,000 and exemplary damages in the amount of $125,000. The district court also ordered Reed to repair the building. Reed did not file a motion for a judgment notwithstanding the verdict or a motion for new trial. This appeal followed.[2]

## DISCUSSION

**Fisher's testimony**

In her first issue, Reed complains about the district court's admission of testimony concerning the activities of David Fisher. While Fisher's exact working relationship with Reed is unclear from the record, it is undisputed that he acted as a "consultant" or "volunteer" in assisting

---

[2] The appeal was suspended on September 11, 2003 when Reed filed for bankruptcy. *See* Tex. R. App. P. 8. The appeal was reinstated on January 31, 2005 and submitted to this Court on September 12, 2005.

Reed in her dispute with Hepker.[3] Fisher's assistance, Hepker testified, included making threatening phone calls on Reed's behalf:

> And he basically threatened me over the phone. He said that he knows how the Courts work, he knows how to work around them. And this is not word for word. I mean, the guy just kind of—he would go from being in Florida to Colorado, back to Texas. He was really kind of a scary person. I wouldn't—it was almost like he was physically threatening me, but I would not say that he did that, but I mean, the way he worded everything, he was saying to me—he said he could eventually bring this back to a jury trial, which we are here, just like he said, and he said he could run my legal costs up to in excess of $50,000, which he's making a darn good dent at doing just that.

Hepker added:

> He [Fisher] said that he was working with her [Reed]. He claimed that he has been in my building, he claimed that there was nothing wrong with my building, that I had no damages, he could do many different things. I'm not certain exactly what he said. But he kept mentioning Ms. Reed.

Hepker also testified that his banker, Reid Sharp, told him that Fisher had called him and, in a "really bizarre conversation," tried to convince Sharp to "intervene in some way, or slow [Hepker] down."

---

[3] When asked if Fisher worked for her, Reed testified that "he doesn't work. This is volunteer." When asked to clarify what she meant by that, Reed responded, "He is a consultant of mine." Reed further testified that she has "never met him before," and has only consulted with Fisher "over the phone."

Reed further acknowledged that Fisher had prepared several court papers for her, including an amended answer, motion to dismiss her attorney, motion to dismiss the case, and motions to recuse the district judge.

There was also evidence that Fisher made a phone call to Kirby Meyer, a professional engineer who inspected the buildings on behalf of Hepker. Meyer testified:

Well, I've never had a phone call like that in regard to these types of cases. He identified himself as David Fisher. I said, are you an attorney, he said no. I said are you an expert or an engineer, he said no. I said, what are you. He said he was a consultant to the Hunter / Reed group. He went into the reports and pictures I had filed. First he inferred that I was not present in October of 2001, couldn't have been, and he said—he had asked me, do you understand the penalty for perjury, and I said yeah, I think I do.

Second, he said, how did you get the pictures of the inside of the Hunter building in October of 2001. It had been quite a while and I couldn't remember, but finally it came to me, and I told him that I got the pictures by standing on a ladder outside, and aimed the camera through the opening. And he started talking about implied criminal trespassing. . . .

Then I finally asked him—I said, I've never had a call like this from someone, and I'm not sure we should even be talking without lawyers involved. And so he went on about various things. We talked for probably an hour, I guess. And I advised him that I thought that what he was doing was totally new to me, but it sure sounded like he was attempting to intimidate a witness. And he said, well, I answered my phone. And that was the end of the conversation.

At trial, Reed objected to the relevance of questioning concerning Fisher's identity and role in the dispute. A brief recess was taken, and the district court inquired into the relevance of the evidence. Hepker's counsel responded:

Your Honor, I've pled exemplary damages, I've pled that she has been consciously indifferent to the plight of my client, and my client has been damaged in that respect, and she has abused the process of the Courts, and she has, through her agent, intimidated witnesses, and threatened him that he was going to see to it that he spent $50,000 in expenses to pursue his interest in the case.

5

When the district court asked who David Fisher was, counsel replied, "David Fisher is Ms. Reed's Svengali, more or less, her advisor." The district court then overruled Reed's objection. On appeal, Reed reurges her contention that any evidence related to the conduct of Fisher is irrelevant.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 650 (Tex. App.—Austin 2005, pet. denied). There is a legitimate basis in the record from which the district court could have found evidence of Fisher's conduct to be relevant.

Predicated upon affirmative findings that Reed's building constituted a nuisance that proximately caused Hepker actual damages, the district court submitted an issue on exemplary damages. Question 4 inquired whether the jury found, by clear and convincing evidence, that "Sandra Reed's conduct or that of a person she authorized to act for her, if any, in causing or maintaining the nuisance . . . was done with malice." The district court defined malice:

(1) That Sandra Reed, or a person authorized to act for her, had a specific intent to cause substantial injury to Dan Hepker; or

(2) That Sandra Reed's acts or omissions, or those of a person authorized to act for her, when viewed objectively from her standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and Sandra Reed had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.[4]

---

[4] The current statutory definition of malice omits the second paragraph. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (West Supp. 2005).

6

The charge's definition of malice largely tracked the pre-House Bill 4 version of section 41.001 of the civil practice and remedies code. *See* Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109 (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (West Supp. 2005)). However, the charge incorrectly enabled the jury to impose vicarious exemplary damages liability on Reed without first finding that Fisher was Reed's agent *and* that Reed authorized, ratified, or approved of Fisher's actions. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997); *Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 479 n.5 (Tex. App.—Austin 2000, pet. denied). But Reed did not object to any portion of the jury charge and acknowledges that she has waived any charge error.

The district court did not abuse its discretion in concluding that evidence of Fisher's conduct in harassing or intimidating Hepker or third parties was relevant to whether Reed "or a person she authorized to act for her" maintained the nuisance with malice. *See Dennis v. Dial Finance & Thrift Co.*, 401 S.W.2d 803, 805 (Tex. 1966) (extended campaign of harassment and intimidation can be material evidence of malice); *Ware v. Paxton*, 359 S.W.2d 897, 899 (Tex. 1962) (threatening phone calls can be evidence of malice) (citing *Duty v. General Fin. Co.*, 273 S.W.2d 64, 65 (Tex. 1954)); *Waterfield Mortg. Co. v. Rodriguez*, 929 S.W.2d 641, 646 (Tex. App.—San Antonio 1996, no writ) (jury finding of malice can be supported with evidence of "abusive phone calls") (citing *Bank of America v. Bell*, 493 S.W.2d 633, 635 (Tex. Civ. App—Houston [14th dist.] 1973, no writ)).

Reed characterizes Fisher's actions as merely "litigation tactics" unconnected to the "nature or extent of the nuisance in controversy." The district court did not abuse its discretion in concluding otherwise. The record contains evidence that Fisher, on behalf of Reed, went beyond

"litigation tactics" in attempting to harass and intimidate Hepker and third parties, as part of a scheme to maintain the nuisance. This evidence is probative not only of Fisher or Reed's specific intent to harm Hepker, but also the intent or risk that such harassment would delay the litigation and prolong the nuisance. We overrule Reed's first issue.

**Exemplary damages**

In her second issue, Reed asserts that the jury's award for exemplary damages was "unsupported by sufficient evidence." We construe her second issue to be a challenge to the legal and factual sufficiency to the jury's malice finding, which controls whether exemplary damages may be awarded. Again, Reed admits that she waived any error in the jury charge.

In a jury trial, challenges to the legal sufficiency of the evidence must be raised before the trial court and are preserved by: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial specifically raising the complaint. *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991). Challenges to the factual sufficiency of the evidence must be raised in a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2). Reed failed to preserve either a legal or factual sufficiency challenge to the jury's malice finding.[5] Accordingly, she has failed to preserve error on this issue. *See* Tex. R. App. P. 33.1(a). We overrule Reed's second issue.

---

[5] In order to prevent unfair advantage over litigants represented by counsel, *pro se* litigants are held to the same standards as licensed attorneys and are required to comply with applicable laws and procedural rules. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978).

**CONCLUSION**

Having overruled Reed's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   August 31, 2006

Do Not Publish